UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-CR-20272-BLOOM/Valle

UNITED STATES OF AMERICA,
     Plaintiff,

vs.

MATTHEW ALEXANDER KING,
     Defendant.
_____/

**DEFENDANT'S MOTION FOR A DOWNWARD VARIANCE FROM
GUIDELINE RANGE AND REQUEST FOR A REASONABLE SENTENCE**

COMES NOW the Defendant, MATTHEW ALEXANDER KING, through undersigned counsel, and respectfully files this Motion for a Downward Variance from the Guideline Range and Request for a Reasonable Sentence, pursuant to Rule 32, Fed. R. Crim. P. (as effective December 1, 2003), S. D. Fla. L. R. 88.8 and U.S.S.G., section 6A1.3 (b), for his sentencing scheduled on November 12, 2020. The Defendant requests that the court consider a sentence concurrent to King 1, and well less than the guideline range of 262 months, inasmuch as it is submitted that under the circumstances of this case and the psychiatric opinions and psychological opinions in this case, that a downward variance would constitute a reasonable sentence in this case, and that a consecutive sentence and a guideline sentence is more than is necessary to effectuate the ends of justice.  In support thereof the Defendant states the following facts and circumstances particular to him and his case, as follows:

**Psychological and Psychiatric Background of King 1 and King 2**

1.     The defendant was indicted in the instant case ("King 2") on May 9, 2019, while at FDC awaiting a restitution hearing in King 1, the below referenced related case no. 18-cr-20591-RAR ("King 1").

United States of America v. Matthew Alexander King, Case No. 2019-CR-20272
*Motion for a Downward Variance from Guideline Range and Request for a Reasonable Sentence*
Page **2** of **12**

2.      In King 1, the defendant had entered a guilty plea on October 9, 2018, to one count of murder-for-hire, for which he was sentenced on January 14, 2019 to imprisonment for 97 months and a term of supervised release of three years, and to receive mental health treatment while in custody, ***(King 1, DE 31)***, based upon the court's findings that the Defendant suffered from diminished capacity as more fully set forth below.  ***(King 1, DE 43)***.  Based upon the facts of the case and the forensic psychiatric report of Dr. Michael Maher, M.D., the Court found and/or ordered at sentencing the following:

(a) the Defendant acknowledged that "There is something wrong with me, I know." ***(King 1, DE 43, at 23)***;

(b) the Court acknowledged and found that "The only thing I was looking at was his specific conduct related to the hiring of the hitman. There are a lot of Keystone Cops elements to that.  And had no harm befallen anyone, it's easy to say, okay, he obviously has all these emotional and mental problems, and nobody realistically is going to kill five people for $750. He doesn't even know how to figure how to pay even the minimal amount of money in comparison to what's happening…. ***(King 1, DE 43, at 23)***;

The fact that he has absolutely no arrests is somewhat mitigation.  I also believe that his youth, immaturity, poor judgment, and clear psychological and emotional deficits are somewhat mitigating." ***(King 1, DE 43, at 24)***;

(c) the court ordered that "mental health treatment and substance abuse treatment including the 500 hour residential drug and alcohol program while he's incarcerated if he otherwise qualifies;" ***(King 1, DE 43, at 26-27)***;In this respect, the Court stated that "I do believe that Mr. King genuinely suffers from those psychological and emotional deficit. So even though

United States of America v. Matthew Alexander King, Case No. 2019-CR-20272
*Motion for a Downward Variance from Guideline Range and Request for a Reasonable Sentence*
Page **3** of **12**

the doctor didn't testify, I'm fully accepting all the information in his report." ***(King 1, DE 43, at 27)***;

(d) the court ordered that Special conditions of supervised release of "anger control and domestic violence treatment, mental health treatment, substance abuse treatment," and concurrent sentence with any sentence received from further anticipated state court prosecution. ***(King 1, DE 43, at 26)***;

(e) the court set a restitution hearing for illegal restitution for April 12 at which counsel waived the defendant's presence. ***(King 1, DE 43, at 28)***;

3.      Unfortunately, following sentencing in King 1, a restitution hearing about approximately 1.5 million dollars was set for April 12, 2019, which effectively delayed the needed mental health treatment for the defendant, as well as contributing to the creation of a conflict between the defendant and his counsel because restitution was unexpected and illegal in King 1.

4.      On about March 4, 2019, in related case no. 18-CR-20591, the defendant's original trial counsel withdrew due to conflicts over, among other things, the restitution hearing. (DE 32 & 34).  On April 9, 2019, in related case no. 18-CR-20591, the undersigned was retained by the family for the restitution hearing which had created a conflict between the defendant and his counsel. (DE 38).

5.      Ultimately, On February 25, 2020, the King 1 court entered an Order Denying Restitution on the ground that the 1.5 million dollar restitution sought was outside of that authorized by statutory law based upon the offense of conviction. ***(King 1, DE 68).***

6.      The defendant was indicted in King 2 on May 9, 2019, in a 6-count indictment, charging the defendant during a time period in or about December 2018 through February 13,

United States of America v. Matthew Alexander King, Case No. 2019-CR-20272
*Motion for a Downward Variance from Guideline Range and Request for a Reasonable Sentence*
Page **4** of **12**

2019, with the conduct associated with other cooperating inmates as set forth in the PSR ***(King 2, PSR at parag. 11-17)*** and the stipulated factual proffer ***(King 2, DE 52).***

      7.      On August 9, the undersigned contacted counsel for the government and confirmed that the defendant was under another federal investigation for activities that recently occurred at the Broward County Jail.  Mr. King was thereafter again psychologically evaluated by the court for which a report was rendered. This forensic report of December 9, 2019, by Rodolfo A. Buigas, Ph.D., Forensic Psychologist, on behalf of the Bureau of Prisons, recognized that Dr. Jeffrey Toomer "found deficits in cognitive, psychological and behavioral functioning that are of long durations with below average intellectual functioning, and consistent with the likelihood of organized brain impairment," as well as Dr. Maher's report referenced herein. Dr. Buigas noted that Dr. Maher reported "[the defendant] has limited and impaired understanding of the wrongfulness of his actions…is amenable to intervention and treatment." Dr. Buigas's treatment recommendations include 'individual psychotherapy to improve his coping mechanisms and style of interaction with others…drug treatment programming,… and continued treatment with psychiatric medications….", and that some of his disturbances appear to stem from characterological dispositions and will likely prove stable over time."

      8.      Mr. King has reviewed the PSR and makes the following clarifications or objections to the PSR:

      (a) at to paragraph 63, there was no surgery.

      (b) as to paragraph 66, the suicide was with a belt, not a rope.

      (c) as to paragraph 69, he was reportedly prescribed mirtazapine and citalopram for treatment of anxiety and insomnia in 2018, not presently.

      (d) as to paragraph 74, the defendant has also used cocaine.

United States of America v. Matthew Alexander King, Case No. 2019-CR-20272
*Motion for a Downward Variance from Guideline Range and Request for a Reasonable Sentence*
Page **5** of **12**

(e) as to paragraph 81, the defendant had applied for a TSA job in March-June 2018.

The PSR states a guideline range of 262-327 months.

9.      Pursuant to the Plea Agreement, the sentence herein may run concurrently with

the existing sentence in King 1, **(King 2, DE 53, parag. 7)**;

## MEMORANDUM OF LAW

In *Pepper v. United States*, 562 U.S. 476 (2011), the court stated:

"It has been uniform and constant in the federal judicial tradition for the sentencing judge
to consider every convicted person as an individual and every case as a unique study in the
human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to
ensue." *Koon v. United States*, 518 U.S. 81 (1996). Underlying this tradition is the principle that
"the punishment should fit the offender and not merely the crime." *Williams*, 337 US. At 247, 69
S. Ct. 1079.

The Court went on to say that the punishment should not merely suit the offense, "but the

individual defendant." See *Wasman v. United States*, 468 U.S. 559 (1984).

While courts should give "respectful consideration" to the now advisory guidelines and

their accompanying policy statements, the court in *Pepper* stressed that post-*Booker* decisions

make clear that a district court may, in appropriate cases, impose a non-guideline sentence based

the consideration of the individual defendant's circumstances

The sentencing guideline range is not presumptively reasonable, is advisory only, and is

but one and certainly not the most important factor the court must consider in fashioning a

reasonable sentence. *Rita v. United States*, 127 S. Ct. 2456 (2007); *Gall v. United States*, 128 S.

Ct. 586 (2007). In *United States v. Hunt*, 459 F. 3d 1180 (11th Cir. 2006), the court held that

there are "many instances" where the guideline range will <u>not</u> yield a reasonable sentence. *Id.* at

1184. The court held that district courts are obligated to impose a reasonable sentence regardless

of the guideline range, so long as the guideline has been considered. *Id.*

United States of America v. Matthew Alexander King, Case No. 2019-CR-20272
*Motion for a Downward Variance from Guideline Range and Request for a Reasonable Sentence*
Page **6** of **12**

With the exception of unconstitutional considerations (e.g. race, sex, etc.) there is <u>no</u> limit to the type and nature of information a court may consider in imposing a reasonable sentence. This point was made abundantly clear by the Supreme Court in the opening paragraph of its decision in *Pepper*, supra, at 1235:

> This Court has long recognized that sentencing judges "exercise a wide discretion" in the types of evidence they may consider when imposing sentence and that "[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." Williams v. New York, 337 U.S. 241, 246–247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Congress codified this principle at 18 U.S.C. § 3661, which provides that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background, character, and conduct," and at § 3553(a), which sets forth certain factors that sentencing courts must consider, including "the history and characteristics of the defendant," § 3553(a)(1).

The Supreme Court of the United States has recognized that "impaired intellectual functioning is inherently mitigating," *Atkins v. Virginia*, 536 U.S. 304, 316 (2002). The Court also emphasized that "As any parent knows and as the scientific and sociological studies confirm, a lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions…Youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage…" *Roper v. Simmons*, 543 U.S. 551, 569 (2005). The Supreme Court further stated that: "The character of juvenile is not as well-formed as that of an adult. The personality traits of juveniles are more transitory, less fixed…The susceptibility of juveniles to immature and irresponsible conduct is not as morally reprehensible as that of an adult." *Id.* at 570. See also, *Gall v. United States*, 552 U.S. 38 (2007) (Immaturity at the time of the offense is not an inconsequential consideration and may be a mitigating factor warranting a downward variance). Finally, the Supreme Court recognized that ***"the qualities that distinguish juveniles from adults do not disappear when an individual turns 18."*** Id. at 574 [emphasis added]

United States of America v. Matthew Alexander King, Case No. 2019-CR-20272
*Motion for a Downward Variance from Guideline Range and Request for a Reasonable Sentence*
Page **7** of **12**

### Mr. King's Mental and Emotional History and Characteristics

Given Mr. King's mental and emotional history and characteristics, and the lack of an opportunity for treatment while awaiting the restitution hearing and having the conflict over the restitution hearing, and considering the factors set forth in 18 USC § 3553(a), it is respectfully submitted that the court consider a downward variance from the guideline range as both appropriate and reasonable, and to make the sentence herein to run concurrent with the sentence in King 1 and any state sentence. This would and should give Mr. King an opportunity to receive the treatment that has been recommended by Drs. Maher, Toomer, and Buigas.

Mr. King had no prior arrests, convictions, or history of violent or criminal behavior, yet shortly after turning 21, he conspired with an informant to murder a family in exchange for a $766.00 gold chain, which was considered by the King 1 court as Keystone cops under diminished capacity.  The purpose of the instant memorandum is to show that after this happened, under all of the circumstances of this case Mr. King did not have an opportunity for treatment, and that a downward variance In King 2 below the guideline level is fair and reasonable, subject to the same considerations as King 1.

A forensic psychiatric evaluation was conducted by Dr. Michael S. Maher, in which he concludes that while Mr. King is chronologically a young adult (he committed the instant offence shortly after turning 21), his psychological and emotional development is consistent with that of a midrange teenager in the general range of fourteen to sixteen years of age. In addition, Mr. King has a significant history of childhood and developmental psychological impairments and academic limitations for which he never received appropriate interventions and treatments. As such, Mr. King is impulsive, has extremely poor judgment (like many fourteen to sixteen-year-olds) with limited ability to anticipate the consequences of his actions.

United States of America v. Matthew Alexander King, Case No. 2019-CR-20272
*Motion for a Downward Variance from Guideline Range and Request for a Reasonable Sentence*
Page **8** of **12**

Dr. Maher conceded that while Mr. King's condition does not rise to the level of rendering him incapable of understanding the nature and consequences of his actions, and that his impairments do not reach a threshold consistent with a not-guilty-by-reason-of-insanity plea, Mr. King's actions were done with a limited ability to anticipate their future physical effects and consequences and can be best understood as an impulsive adolescent fantasy rather than a true premeditated adult plan to engage in a murder-for-hire scheme. In short, Dr. Maher concludes that Mr. King engaged in the murder-for-hire scheme while suffering from diminished mental and psychological capacities.

As in King 1, an examination of the facts in *United States v. Allen*, 250 F.Supp.2d 317 (S.D. New York 2003) and the Court's conclusion is instructive. Allen was a middleman in a gun transaction for which he was paid $50.00, obtained crack cocaine from an individual and sold it to an informant and received $60.00 and arranged a sale of ecstasy for which he was paid $100.00. This is similar to Mr. King offering a $766.00 gold chain in exchange for the murder of a family. Like Mr. King, Allen previously received a serious head injury and, according to Allen's psychological evaluation, he, like Mr. King, suffered from a number of personality defects, the most striking of which was his immaturity. Allen's doctor concluded that "although 20 years of age, his ability to relate and to understand concepts resembled more that of a 14 or 15-year-old than a mature adult." *Id.* at 322. The Court concluded that these facts warranted a downward departure under section 5K2.0 of the sentencing guidelines, since Allen's limited mental capacity and immaturity took his case outside the heartland of drug and gun distribution cases. Accordingly, the Court ordered a downward departure from a 70 to 87 months guideline range and sentenced Allen to 30 months incarceration. Similarly, Mr. King is respectfully

United States of America v. Matthew Alexander King, Case No. 2019-CR-20272
*Motion for a Downward Variance from Guideline Range and Request for a Reasonable Sentence*
Page **9** of **12**

requesting that the Court grant a downward departure or a variance in light of his limited mental capacity and immaturity.

It is also important for the Court to understand Mr. King's beliefs about his in-laws leading up to his engaging in the instant offense. As noted in Dr. Maher's report, Mr. King met and married a girl who was intellectually disabled. Mr. King's wife was receiving Social Security benefits, and Mr. King believed that her parents were taking and spending those benefits. Mr. King believed that his in-laws were encouraging his wife to leave him and live with them. His in-laws wanted to baptize Mr. King's child in the Santeria religion. (Mr. King had previously observed the family baptizing another child, during which a chicken's head was cut off and blood was spilled onto the child). Mr. King believed that his in-laws encouraged his wife to not move up north with him. Mr. King resented his in-laws for not supporting and believing his wife, who had reported being sexually assaulted by a neighbor. After a DCF hearing, subsequent to an incident where Mr. King's wife battered him and was arrested, Mr. King feared losing custody of his child to his in-laws. In short, Mr. King believed that his in-laws were doing everything possible to encourage his wife to leave him and to gain custody of his child. Offering a $766.00 gold chain in return for murdering his in-laws was Mr. King's "solution to his perceived problems, and clearly reflects his immaturity, lack of judgment, impulsivity, and failure to fully recognize the consequences of his choices and actions. ***(King 1, DE 23).***

## Mr. King's Lack of Sophistication

An additional factor warranting a downward variance is the utter lack of sophistication with which Mr. King committed the instant offence. Mr. King allegedly offered the informant millions of dollars of which he had none or no access to, which is readily apparent to the informant and those around him. The same was true in King 1, where it was unsophisticated and

United States of America v. Matthew Alexander King, Case No. 2019-CR-20272
*Motion for a Downward Variance from Guideline Range and Request for a Reasonable Sentence*
Page **10** of **12**

unrealistic it is to offer a $766.00 gold chain in return for having an entire family murdered,

which was overshadowed by the utter lack of sophistication of Mr. King first offering to pay the

informant by check and then agreeing to pay the informant via Zelle, a digital payment to the

informant's bank account, both of which would have left a paper trail evidencing his murder-for-

hire request. See, e.g., *United States v. Jagmohan*, 909 F.3d 61 (2nd Cir. 1990) (the Court

justified a downward departure from the guidelines, in part, because the defendant used a

personal check to pay a bribe).

Mr. King's actions in this case, are equally, if not more unsophisticated and as such,

justify a downward variance from the guideline range.

### Mr. King's Lack of Prior Criminal History and his Ability to be Rehabilitated

Mr. King had no prior arrests, convictions, or history of criminal conduct before King 1,

and had not had the opportunity to receive treatment for his mental condition when King 2

happened.  In effect, King 2 presents itself as an extension of King 1.   Many courts have

recognized that *any* jail sentence (even a short sentence) has a much more significant effect on a

first-time offender than on someone who has prior convictions or contact with law enforcement.

In this case, Mr. King did not have the treatment he needed when he was approached again by

inmates seizing an opportunity to take advantage of Mr. King's diminished capacity for their

own purposes.

Mr. King's actual age, as well as his psychological and emotional development consistent

with that of a 14 to 16-year-old, suggest that rehabilitation is both possible and likely if his has

the opportunity for treatment that was ordered in King 1. The Supreme Court of the United

States in *Roper*, supra, recognized the following about the rehabilitation of younger offenders:

United States of America v. Matthew Alexander King, Case No. 2019-CR-20272
*Motion for a Downward Variance from Guideline Range and Request for a Reasonable Sentence*
Page **11** of **12**

The reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character. From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed. Indeed, "the relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside."… For most teens, [risky or antisocial] behaviors are fleeting; they cease with maturity as individual identity becomes settled. Only a relatively small proportion of adolescents who experiment in risky or illegal activities develop entrenched patterns of problem behavior that persist into adulthood.

*Id.* at 570.

## Conclusion

"More than any other single factors, mental defects have been respected as a reason for leniency in our criminal justice system." *Caro v. Woodford*, 280 F.3d 1247 (9th Cir. 2002). As noted, the Supreme Court has reaffirmed the proposition that this court's sentence must be tailored to the history and characteristics of the individual as much as the offense itself. As Supreme Court Justice Anthony Kennedy stated before the Senate Judiciary Committee on February 14th, 2007: "Our sentences are too long, our sentences are too severe, our sentences are too harsh…[and because there are so few pardons] there is no compassion in the system, there is no mercy in the system." In a speech to the American Bar Association in 2003, Justice Kennedy also stated: "A country which is secure in its institutions, confident in its laws, should not be ashamed of the concept of mercy." Given all the facts and circumstances of the instant case, it is respectfully requested that a variance below the sentencing guideline range would be both fair and reasonable,

WHEREFORE, the Defense respectfully requests this Court to consider a downward variance from the 262 month sentencing guidelines or that is otherwise determined at sentencing, including a concurrent sentence with King 1, under circumstances whereby the Defendant receives the necessary mental treatment that is needed, based upon the medical and psychiatric and

United States of America v. Matthew Alexander King, Case No. 2019-CR-20272
*Motion for a Downward Variance from Guideline Range and Request for a Reasonable Sentence*
Page **12** of **12**

psychological opinions of Drs. Maher, Toomer, and Buigas, in this matter; and for such other relief

as is appropriate.

Respectfully Submitted,

/s/ Nathan D. Clark
NATHAN D. CLARK
Fla. Bar No. 340561
Coral Reef Law Offices, P.A.
17641 S. Dixie Highway
Miami, FL 33157
T: (305) 255-7500
Email: nclark@coralreeflaw.com
Email: paralegal@coralreeflaw.com
*Attorney for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Defendant's Motion for a Downward Variance from Guideline Range and Request for a Reasonable Sentence, on this 6th day of November, 2020, has been served via the CM/ECF Southern District of Florida E-Filing Portal to:

Michael Felicetta, Esq.
Assistant U.S. Attorney
Middle District of Florida
Ocala Division
35 SE 1st Avenue, Suite 300
Ocala, FL 34471
Tel: (352) 547-3600
Email: Michael.felicetta@usdoj.gov

Lakeisha Brantley
Senior United States Probation Officer
Wilkie D. Ferguson, Jr. U.S. Courthouse
400 N. Miami Avenue, Ninth Floor South
Miami, FL 33125
Tel: (305) 523-5347
Email: lakeisha_brantley@flsp.uscourts.gov

/s/ Nathan D. Clark
NATHAN D. CLARK
Florida Bar No. 340561
